IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FARRIS THOMAS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 15-CV-34-NJR-DGW |
| DAVID HAYMES, CHRISTINE BROOKS, DR. JOHN COE, and MARK HODGE, | ) ) ) ) ) |
| Defendants. | ) ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Now pending before the Court is the Motion for Summary Judgment filed by Defendants David Haymes, Christine Brooks, and John Coe on February 18, 2016 (Doc. 62). For the reasons set forth below, the motion is granted.

### INTRODUCTION

Farris Thomas, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), suffered pain from a left inguinal hernia which he alleges was not treated appropriately by medical staff at the Lawrence Correctional Center from November 1, 2012, until he finally had surgery on September 5, 2014. Defendants, Dr. Haymes, Dr. Coe, and Nurse Brooks, each played a role in Thomas's treatment, although other medical providers also made decisions about his care. Thomas also alleges that Warden Mark Hodge told him that he would not get any surgery for his medical condition unless he was dying.

Thomas is proceeding under 42 U.S.C § 1983 on one count of deliberate indifference to a serious medical need in violation of the Eighth Amendment against each of the four defendants (Doc. 8). Defendant Hodge, however, has not sought summary judgment.

## BACKGROUND

Thomas has had right and left inguinal hernias from at least 2006 (Doc. 63-2, p. 1), but his complaints against Defendants started with a visit to the Healthcare Unit at Lawrence Correctional Center on February 13, 2012 (*Id*. 3). At that time, Thomas felt pain from his right hernia and wanted surgery to remove it (*Id*.). A nurse determined that the hernia was "reducible,"[1] and that no surgery was required (*Id*.). She did not refer him to a doctor; instead, she educated Thomas on managing the hernia and prescribed Tylenol for the pain (*Id*.). Thomas nonetheless saw a doctor on April 24, 2012; it was noted that both hernias (on the left and right side) were reducible and that they were not incarcerated or strangulated (*Id*. 4; *See fn 3*, below). His Tylenol (325 mg) was continued, and he was prescribed an "Athletic Supporter" (*Id*.). A "Scrotal Support" was actually issued on May 31, 2012 (*Id*. 5).[2]

On October 23, 2012, Thomas was seen by Nurse Brooks (*Id*. 6). He complained of a bump on his scrotum that was growing and that he could not use the scrotal support because it was painful. Nurse Brooks referred him to a doctor for evaluation (*Id*.). The doctor (the signature is unreadable, but it was probably Dr. Butalid, who is not a

---

[1] A reducible hernia indicates that the contents of the sac (that protrudes from the abdomen) can be returned to their normal location. STEDMAN'S MEDICAL DICTIONARY, 28th ed., "reducible hernia," p. 881.

[2] The Court assumes these are the same thing.

defendant in this case) examined the scrotal mass on October 30, 2012, and ordered an ultrasound. The doctor further noted that the hernias were reducible and told Thomas to avoid weight lifting and to follow up on the ultrasound, if the pain increases, or the hernia becomes irreducible (*Id*. 7). On November 18, 2012, a follow up by Dr. Butalid reveals that the hernias again were found to be reducible, and Thomas was instructed to wear the supports identified above (*Id*. 9). It also appears that the doctor directed a surgical evaluation, and Thomas was instructed on the process on November 21, 2012 (*Id*.). However, Dr. Haymes, to whom the surgical evaluation request was directed, denied the evaluation because more information was needed on whether the hernias were reducible (Doc. 63-5, p. 1). On December 7, 2012, more information was received by Dr. Haymes, which indicated that the hernias were reducible, and he denied the surgical evaluation and recommended conservative treatment (*Id*. 2).

By January 7, 2013, Thomas's pain medication was switched to Motrin, 200 mg (Doc. 63-4, p. 1), and his treating doctor requested an "urgent referral" for surgical evaluation of Thomas's hernia (Doc. 63-5, p. 3). That request was likewise denied because of insufficient information (*Id*.). By January 22, 2013 (after, apparently, another referral by Dr. Butalid), Dr. Haymes directed an examination by Elaine Hardy, NP "if not already done," in order for the request to be re-presented (*Id*. 4). Finally, after Nurse Hardy's evaluation, on February 5, 2013, the hernia was determined to be non-reducible, and Thomas was approved for a surgical evaluation by Dr. Pontius (*Id*. 5; Doc. 63-2, p. 12).[3] Thomas's appointment with Dr. Pontius was set for February 7, 2013 (Doc. 63-2, p.

---

[3] A non-reducible hernia is "incarcerated" and can become "strangulated" which could lead to "health complications" (Doc. 63-8, p. 3).

13). Although there are no medical records reflecting it, Dr. Pontius appears to have recommended surgery;[4] however, Dr. Garcia, who, like Dr. Haymes was referred to for approval of the surgery, denied surgery because the hernia was found to be reducible (*Id*. 14).

Thomas's hernias (in particular, his left hernia) continued to be evaluated, and conservative treatment continued to be ordered (like no weight lifting, use of a hernia belt,[5] an additional ultrasound, and pain medication--on April 23, 2013, his Motrin was increased to 400 mg) (*Id*. 16-19). When Dr. Coe saw Thomas on June 21, 2013, he was initially unaware of what happened with Dr. Pontius or Dr. Garcia; however, upon being notified, he told Thomas to follow up if his hernia becomes "stuck" and changed his pain medication back to Tylenol, 325 mg (*Id*. 20-21; Doc. 63-8, p. 2; Doc. 63-4, p. 2). It apparently became stuck on July 11, 2013, when Thomas saw Nurse Brooks and said he could only reduce his hernia with difficulty; he was told to continue wearing his hernia belt (Doc. 63-1, p. 22). He returned the next day with no apparent change in the treatment protocol (*Id*. 23); he returned again on August 4, 2013, with a new, sharp pain in his side (*Id*. 24).[6] When he followed up on September 11, 2013, it appears that Thomas never received the diagnostic test for the sharp pain, and his hernia belt was determined to be too loose. A new one was ordered and given to Thomas on October 17, 2013 (*Id*. 28,

---

[4] Thomas testified that he saw Dr. Pontius around February 7 or 14, 2013 (Farris Thomas Dep. p. 17-18).

[5] It is unclear from the record whether the hernia belt is the same as the Athletic Supporter and/or the scrotal support. The purpose of the belt is the "keep the hernia from popping out, thus reducing possible pain and discomfort" (Doc. 63-8, p. 2).

[6] He was evaluated for this pain by Dr. Coe who suspected diverticulosis or COPD or Asthma (Doc. 63-2, p. 26).

30).

There are no further significant medical records until April 8, 2014, when Thomas's hernia was again found to be reducible by Dr. Coe (*Id.* 33). On May 15, 2014, Thomas was referred to Dr. Reagan, a urologist, and Dr. Coe determined that the hernia was reducible but with pain (*Id.* 35). Thomas was referred to collegial review for surgery (*Id*). That surgery was approved during the collegial review process (for both hernia repair and removal of the scrotal mass) on June 24, 2014 (*Id.* 37). Around that time, Thomas's pain medication was switched back to Motrin, 400 mg (Doc. 63-4, p. 3). Throughout July, staff attempted to schedule the surgery only to be informed by Dr. Reagan that Thomas would need to see a general surgeon first (Doc. 63-1, p. 39-40).[7] Thomas was scheduled to see Dr. Johnson, the general surgeon, on August 5, 2014. Thomas underwent hernia repair surgery and excision of the scrotal mass on September 5, 2014 (*Id.* 44). After the surgery, Thomas reported pain (for which he was given pain medication) and, by February 17, 2015, he was diagnosed with chronic post-surgical hernia pain (*Id.* 46).

## LEGAL STANDARD

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th

---

[7] Thomas's deposition reveals that Dr. Reagan was only involved in removing the scrotal mass, and Dr. Johnson would have been responsible for dealing with the hernia (Thomas Dep. p. 32).

Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of a nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted).

  The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, Thomas must show first that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

  With regard to the first showing, the following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient

would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.*, 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

A prisoner also must show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness," as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Put another way, a plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence … and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S.

825, 842 (1994) (citations omitted). A plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes*, 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

## DISCUSSION

The Seventh Circuit has held that a hernia can be a serious medical condition. *See Heard v. Sheahan*, 148 F. App'x 539, 540 (7th Cir. 2005). Indeed, the Mayo Clinic's website asserts that complications related to hernias may result in life-threatening situations, and repairs are a common surgical procedure.[8]

As articulated by the Seventh Circuit, "[a]lthough it is true that neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference … to prevail on an Eighth Amendment claim 'a prisoner is not required to show that he was literally ignored.'" *Greeno*, 414 F.3d at 654 (quoting *Sherrod*, 223 F.3d at 611 (other citations omitted)). Further, "a doctor's choice of the 'easier and less efficacious treatment' for an objectively serious medical condition can still amount to deliberate indifference for purposes of the Eighth Amendment." *Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010) (quoting *Estelle*, 429 U.S. at 104, n.10 (1976) (other citations omitted)). Accordingly, the provision of conservative treatment (*i.e.* pain prescriptions and hernia belts), does not, in and of itself, show that Defendants were not deliberately indifferent to Thomas's serious medical condition. And, persistence in a course of

---

[8] *See* MayoClinic.com, "Inguinal hernia," retrieved September 8, 2016, at http://www.mayoclinic.org/diseases-conditions/inguinal-hernia/home/ovc-20206354.

treatment known to be ineffective may violate the Eighth Amendment. *Greeno*, 414 F.3d at 655 (finding that a genuine issue of material fact existed as to whether physician was deliberately indifferent to prisoner's deteriorating medical condition by continuing to persist with course of treatment that had been ineffective); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (stating that "medical personnel cannot simply resort to an easier course of treatment that they know is ineffective").

Thomas's interaction with Defendant Brooks was limited to two visits, the latter of which, on July 11, 2013, was objectionable. During that visit, according to the medical records, Thomas complained about his left hernia being "stuck," and Nurse Brooks noted that "I/M able to reduce hernia per self [with no][9] difficulty" (Doc. 63-2, p. 22). Thomas was instructed to use his hernia belt. The next day, a different nurse noted that Thomas's hernia was reducible–in that same note, however, Thomas is reported as saying that the hernia "always comes out" (*Id*. 23). At the time, Thomas had a prescription for Tylenol, 325 mg, and a hernia belt. Thomas states that on that July 11, 2013 visit, he was in "severe pain" and that when he did "finally" get the hernia back in, it "came back out instantly causing Thomas unbearable pain" but he was nonetheless sent back to his housing unit (Doc. 66, p. 1). Thomas's claim that his hernia came back out again is reflected by his return visit to the healthcare unit the next day. There is, accordingly, a question of fact as to whether the hernia was reducible on July 11, 2013 without pain. This dispute, however, is not over *material* facts. Whether the course of treatment was painful is not the relevant inquiry: the question is whether Defendant

---

[9] The record includes a symbol in place of these words. Nurse Brooks asserts that the note indicates that "plaintiff was able to reduce the hernia by himself without difficulty" (Doc. 63-9, p. 2).

Brooks was deliberately indifferent.

Two weeks before he saw Nurse Brooks, Thomas was evaluated by Dr. Coe, who told him to come back to the healthcare unit if his hernia became stuck. Thomas followed that advice when he came in and was seen by Nurse Brooks. He then was instructed to manually push his hernia back in and instructed to wear his hernia belt, which is meant to keep hernias from popping back out again. Thomas has presented no evidence that such a course of treatment is improper. While the course of treatment may have been painful, which is unfortunate, it is not evidence of deliberate indifference. *See e.g. Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("It would be nice if after appropriate medical attention pain would immediately cease, its purpose fulfilled; but life is not so accommodating. Those recovering from even the best treatment can experience pain. To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd."). Tellingly, Thomas was already prescribed pain medication that did not change when he presented at the healthcare unit again the next day. And he did not complain about his hernia popping out again or associated pain until two months later. It was reasonable for Nurse Brooks to see if the hernia could be manually reduced, and to allow time for the hernia belt to do its job. The medical records, as a whole, reveal that Thomas either did not wear his hernia belt or did not wear it properly during this time period. No reasonable jury would conclude that Nurse Brooks's actions, while causing Thomas some pain, exhibited deliberate indifference. *But cf. Cotts v. Osafo*, 692 F.3d 564 (7th Cir. 2012) (examining jury instructions in a case involving manual reduction of a hernia that was

painful and ineffective over the course of five months and sixteen medical visits).

The relationship between Defendant Haymes and Thomas is based on Haymes's remote assessment that Thomas was not entitled to a surgical evaluation notwithstanding receiving five requests (on November 28, 2012, December 7, 2012, January 7, 2013, January 22, 2013, and February 5, 2013), one of which was urgent.[10] This decision was made based on a treatment noted dated November 18, 2012, which indicates that Thomas's hernia was reducible. That note, which is partially unreadable, contains the words "reducible" in addition to "large" and "pain" and "4x6." It is unclear to the Court why Dr. Haymes did not have the November 18 treatment notes prior to denying a request for surgical evaluation made on November 28. When the request was made on January 7, 2013, the size of the hernia had apparently increased to 5x6 centimeters, and its reducibility was indicated as only "partial." And yet this "urgent" request for a surgical evaluation was again denied. When Dr. Haymes received the fifth request, it was initially denied; but on appeal and after a collegial process, Dr. Haymes approved a surgical evaluation by Dr. Pontius. Thomas's claim against Dr. Haymes, then, is not that he indefinitely denied treatment, but that, in the face of a worsening condition (larger size and only partial reduction), he delayed that treatment.

"A medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'" *Sain v. Wood*, 512 F.3d 886, 894-895 (7th Cir. 2008) (quoting *Collignon v.*

---

[10] Defendants' arguments imply that only two requests for surgical evaluation were made, once on December 7, 2012, and the other on January 7, 2013. But the records do not bear out the implication. The records offer no outward indication that they are merely a continuing evaluation by Wexford employees of a single request made on either of these dates or on November 28, 2012, the date the first request was made (and denied).

*Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1998)). Thus, only if the doctor's decisions are a "substantial departure from accepted professional judgment, practice, or standards" will he be found to be deliberately indifferent. *Id.* (quotation marks and citations omitted). Thomas, unsurprisingly because he is an inmate acting *pro se*, has not provided any evidence of any standard of professional judgment that was ignored by Dr. Haymes. The evidence reveals, however, that when the first request was made, Dr. Haymes denied it because of insufficient information. The second request was denied initially and on appeal, based on a treatment note Dr. Haymes should have had access to prior to the first denial on November 28, 2012. The third "urgent" request was denied even though Thomas's condition may have been objectively worse. It was only after the fourth request, almost two months after the first, that Dr. Haymes elected to remedy the lack of information with an examination.

Nonetheless, Dr. Haymes's actions, while delayed, would not lead a reasonable jury to conclude that he was deliberately indifferent. As the Seventh Circuit recently reaffirmed, "[e]ven objective recklessness–failing to act in the face of an unjustifiably high risk that is so obvious that it *should* be known–is insufficient to make out a claim." *Petties v. Carter*, No. 14-2674, 2016 WL 4631679 (7th Cir. Aug. 25, 2016) (emphasis in original). Perhaps Dr. Haymes should have acted more rapidly, and perhaps Thomas may have been spared some pain and suffering if he had acted quickly to remedy the lack of information. The evidence reveals, however, that Dr. Haymes did not have sufficient information to make a determination, but when he did acquire some information, he did not act outside the realm of professional judgment in determining

that conservative treatment was appropriate. Then, when additional information was required, he ordered an additional evaluation and recommended surgical evaluation. No reasonable jury would find that such conduct meets the standard for deliberate indifference.

Finally, Dr. Coe's treatment of Thomas also cannot be considered deliberate indifference. Prior to Dr. Coe's involvement in Thomas's treatment, Dr. Pontius had recommended surgery that was subsequently denied by Dr. Garcia. Dr. Coe, after being made aware of this development, did not himself order surgery when he first examined Thomas (on June 28, 2013) because, based upon his judgment, Thomas's scrotal mass was benign, and his hernia was reducible. *Id*. (noting that "evidence that *some* medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim" (emphasis in original)). When Dr. Coe next saw Thomas (after Nurse Brooks) on August 23, 2013, the evidence only reveals that he was aware of medical records that showed that Thomas's hernia was reducible and determined that Thomas's hernia belt was too loose to be efficacious. Thus, this is not a scenario where Dr. Coe was merely continuing ineffective treatment. Reducing the hernia appeared to work, and the hernia belt was not being used as intended and so its benefits were not utilized. *See Greeno*, 414 F.3d at 655 (noting that persisting in a course of treatment *known to be ineffective* is a violation of the Eighth Amendment). Dr. Coe then ordered a new hernia belt (on September 11, 2013) and did not see Thomas related to his hernia and scrotal mass until a repeat ultrasound of the scrotal mass was ordered in April 2014. At that time, Dr. Coe noted that even though the hernia remained reducible, the scrotal

mass was of concern (it became tender and could be cancerous), and he submitted the case for a collegial review, which ultimately resulted in a referral to a surgeon. After that, Thomas was scheduled for surgery, although the actual date of the surgery was not fixed for reasons that appear to be out of Dr. Coe's control.

Thomas argues that he suffered in needless pain, from June 2013 to September 2014, and was required to use an ineffective hernia belt by Dr. Coe. The records reveal, however, that Thomas's conditions were being monitored, that he was treated when he complained, that his symptoms were appropriately evaluated, and that he was given pain medication. The records do not reveal that Thomas complained to any of the medical professionals that the pain medication was not working, even though he did have intermittent pain when a reduction of his hernias was attempted. There is no constitutional standard that would guarantee an inmate a 100% pain free life; rather, the standard only requires that doctors are not deliberately indifferent to that pain. *See e.g. Snipes*, 95 F.3d at 592. No reasonable jury would find that Dr. Coe was deliberately indifferent to Thomas's health needs.

## Conclusion

For the reasons set forth above, the Motion for Summary Judgment filed by Defendants David Haymes, Christine Brooks, and John Coe, on February 18, 2016 (Doc. 62) is **GRANTED**. The Clerk is **DIRECTED** to enter judgment in favor of Defendants David Haymes, Christine Brooks, and John Coe and against Thomas.

In light of this Order, the only claim that remains is a deliberate indifference to medical needs claim against Defendant Hodge. Based on the Court's findings, Thomas is

now notified that the Court is inclined to grant summary judgment in favor of Defendant Hodge pursuant to Federal Rule of Civil Procedure 56(f). Thomas and Defendant Hodge are **ORDERED** to respond and brief the issue of whether summary judgment should (or should not) be granted in favor of Defendant Hodge on or before **October 24, 2016**.

    IT IS SO ORDERED.

    DATED:   September 26, 2016

                                            */s/ Nancy J. Rosenstengel*

                                           **NANCY J. ROSENSTENGEL**
                                           **United States District Judge**