IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FARRIS THOMAS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 3:15-cv-34-NJR-DGW |
| MARK HODGE, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Pending before the Court are cross Motions for Summary Judgment filed by Plaintiff Farris Thomas (Doc. 82) and Defendant Mark Hodge (Warden) (Doc. 84). For the reasons set forth below, Thomas's motion is denied, and Warden Hodge's motion is granted.

### INTRODUCTION

Thomas filed this action alleging various medical providers at Menard Correctional Center ("Menard") exhibited deliberate indifference to his serious medical condition, an inguinal hernia. In September 2016, this Court found that each of those medical providers was entitled to summary judgment because no reasonable jury would find any of them acted with a sufficiently culpable state of mind. (Doc. 80).

Thomas also alleged that Mark Hodge, who was at the relevant time the Warden of Menard, was deliberately indifferent to his medical needs. Warden Hodge did not seek summary judgment at the same time as the other defendants. Because the other

defendants were granted judgment on the same medical condition that forms the basis for Thomas's claim against Warden Hodge, however, the parties were directed to inform the Court why judgment should not be entered in his favor also. *See* FED. R. CIV. P. 56(f)(1) (permitting judgment in favor of a nonmoving defendant upon notice and an opportunity to respond). Thomas's claim against Warden Hodge is now before the Court for consideration.

## BACKGROUND

On February 5, 2013, Thomas's hernia was determined to be non-reducible, and he was approved for a surgical evaluation by Dr. Pontius. (Doc. 63-5, p. 5; Doc. 63-2, p. 12). Dr. Pontius recommended surgery on February 14, 2013; however, surgery was denied by Dr. Garcia later that month. (Doc. 63-2, p. 14).

On February 28, 2013, Thomas submitted an emergency grievance based on the denial of surgery. (Doc. 82, p. 7). Warden Hodge found the grievance was not an emergency and directed Thomas to file a "grievance in the normal manner." (Doc. 82, p. 7). As instructed, on March 11, 2013, Thomas submitted a non-emergency grievance setting forth the same complaint. (Doc. 82, pp. 8-9). After finding out from the health care unit that a follow-up ultrasound had shown the hernia was reducible and surgery was not warranted, the grievance officer recommended Thomas's grievance be denied. (Doc. 82, p. 10). Warden Hodge concurred with the recommendation on July 5, 2013. (Doc. 82, p. 10).

Thomas submitted another emergency grievance six weeks later, this time elaborating on the pain he was suffering. (Doc. 82, p. 11). Again, emergency review was

denied by Warden Hodge. (Doc. 82, p. 11). While Thomas subsequently submitted the grievance to his counselor (Doc. 82, p. 11), he has not provided any additional documentation or evidence that he also submitted the document to his grievance officer.

A few months later, on September 7, 2013, Thomas spoke with Warden Hodge while he was on an inspection tour of the yard. (Doc. 82, p. 4). Thomas "explained that he was denied surgery and was going through severe pain with his hernia and left-testical [sic]." (Doc. 82, p. 4). In response, Thomas alleges Warden Hodge stated: "They are not gonna pay for a surgery if it's not life-threatening." (Doc. 82, p. 4). The Warden, who does not recall speaking to Thomas, denies that he would have made such a statement to an inmate. (Doc. 85-2, p. 1).

An "unscheduled inspection report" authored by Warden Hodge on the same day as the alleged conversation between Warden Hodge and Thomas states: "Eight house was on the yard and I spoke to several offenders regarding multiple issues. These will be followed up on Monday with my HCUA and CSS." (Doc. 82, p. 12). Thomas had no further interaction with the Warden with respect to his hernia.

Repair surgery was subsequently approved in the summer of 2014 (Doc. 63-2, p. 37), and Thomas underwent the surgery on September 5, 2014 (Doc. 63-2, p. 44).

## Discussion

Generally, a prison official cannot be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to an inmate's health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference. *Farmer v.*

*Brennan*, 511 U.S. 825, 837 (1994). Thus, without more, the Warden's denial of Thomas's grievance alone does not establish liability under 42 U.S.C. § 1983.

Deliberate indifference may be found, however, where a government official knows about unconstitutional conduct and facilitates, approves, condones, or "turn[s] a blind eye" to it. *Perez v. Fenoglio,* 792 F.3d 768, 782 (7th Cir. 2015) (citing *Vance v. Peters,* 97 F.3d 987, 992–93 (7th Cir. 1996). An inmate's correspondence to a prison administrator may establish a basis for finding deliberate indifference where that correspondence provides sufficient knowledge of a constitutional deprivation and the official fails to investigate, and if necessary, rectify the unconstitutional condition. *Vance,* 97 F.3d at 993. In other words, prisoner requests for relief that fall on "deaf ears" may evidence deliberate indifference. *Dixon v. Godinez,* 114 F.3d 640, 645 (7th Cir. 1997). Deliberate indifference can also be shown where the risk from a course of treatment—or a lack of treatment—is obvious enough that a factfinder could infer that defendant knew about the risk, yet disregarded it. *Estate of Simpson v. Gorbett,* 863 F.3d 740, 747 (7th Cir. 2017) (citing *Petties v. Carter,* 863 F.3d 722, 729 (7th Cir. 2016)).

Here, the Warden did not ignore or disregard Thomas's complaints. While the Warden found his initial grievance did not present an emergency (Doc. 82, p. 7), when Thomas submitted a regular grievance, his claim was investigated (Doc. 82, p. 10).[1] Further, that investigation involved the grievance officer contacting the healthcare unit

---

[1] The second emergency grievance was also denied after a finding by Warden Hodge that the grievance did not constitute an emergency. (Doc. 82, p. 11). While the record reflects Thomas resubmitted that grievance to his counselor through the non-emergency grievance process, there is no evidence he ever submitted it to the grievance counselor. As a result, nothing in the record supports a finding that the second grievance ever came before Warden Hodge, and thus it cannot be the basis for a finding of deliberate indifference.

and learning that a subsequent ultrasound had found the hernia was retractable and therefore Thomas was not a surgical candidate. (Doc. 82, p. 10). Wardens, and other non-medical staff, are "entitled to defer to the judgment of jail health professionals" as long as they do not ignore complaints. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). Indeed, "the law encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so." *Id*. Thus, the record indicates Warden Hodge did not turn a blind eye to Thomas's complaints, but rather investigated them. The fact that Thomas later required surgery is not sufficient for a factfinder to infer the original medical assessment was wrong, or that Warden Hodge was somehow deliberately indifferent because he should have somehow foreseen Thomas would eventually need surgery.

With respect to the Warden's remark, that surgery would only be provided in "life threatening situations" (Doc. 82, p. 4), it is just that, a remark. *Mlaska v. Schicker*, 2015 WL 6098733, *8 (S.D. Ill. 2015) (comments by non-medical staff, that they cannot make medical staff provide care or that certain testing would not be paid for by a medical provider, fail to state a deliberate indifference claim). Further, the comment is tempered by the Warden's report indicating that concerns brought to his attention while on the yard, presumably including Thomas's concerns, were forwarded to the appropriate unit. (Doc. 82, p. 12). Thomas has presented no evidence the Warden failed to follow through on his plan or that, by stating that only life threatening conditions would warrant surgery, he was ignoring Thomas's complaints.

The Warden reviewed Thomas's complaints and relied on the prison medical expertise in making his determination with regard to Thomas's grievance. Thus, the evidence does not support a finding that the Warden was deliberately indifferent to Thomas's medical needs.[2]

## CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment filed by Thomas (Doc. 82) is **DENIED**, and the Motion for Summary Judgment filed by Warden Hodge (Doc. 84) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant Mark Hodge and against Thomas and to close this case.

**IT IS SO ORDERED.**

**DATED:** September 18, 2017

**NANCY J. ROSENSTENGEL**
**United States District Judge**

---

[2] In light of this conclusion, it is unnecessary to discuss Warden Hodge's claim of qualified immunity.